UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DONALD BUCKNER, | ) | 1:05-CV-00156-AWI-SMS |
| Plaintiff, | ) ) ) | ORDER DENYING MOTION OF DEFENDANT VF IMAGEWAEAR, INC. FOR LEAVE TO |
| v. | ) ) | FILE A THIRD-PARTY COMPLAINT (DOC. 74) |
| E.I. DuPONT de NEMOURS and Company, et al., | ) ) ) | |
| Defendants. | ) ) | |
| AND RELATED CROSS-ACTIONS. | ) | |

Plaintiff is proceeding with counsel with a civil action. The matter has been referred to the Magistrate Judge pursuant to 28 U.S.C. § 636(b) and Local Rules 72-302 and 72-304.

The motion of Defendant VF Imagewear, Inc. (VF), named in the complaint as Bulwark Protective Apparel, for leave to file a third-party complaint against E.I. DuPont de Nemours and Company (DuPont) came on regularly for hearing on April 27, 2006, at 9:30 a.m. in Courtroom 7 before the Honorable Sandra M. Snyder, United States Magistrate Judge. All appearances were telephonic. Michael Hernandez appeared on behalf of Plaintiff; Leslie Burnet and Stephen Acker appeared on behalf of the moving Defendant VF Imagewear, Inc.; James Savage appeared on behalf of Defendant

1

Ameripride Uniform Service; and George Muhar appeared for Defendant Springfield LLC. The Court had reviewed all the papers submitted in connection with the motion, the opposition, and the reply. After argument, the matter was submitted to the Court.

I. <u>Background</u>

On March 9, 2006, Defendant VF Imagewear, Inc. (named in the complaint as Bulwark Protective Apparel) (VF) filed a notice of motion and motion of to file a third-party complaint against E.I. Dupont de Nemours and Company (DuPont), a memorandum of points and authorities, and a declaration of Leslie Anne Burnet. A proof of service indicates that it was served on all parties. Defendant Washing Systems filed a statement of non-opposition to the motion on April 10, 2006. Plaintiff Donald Buckner filed opposition on April 12, 2006, with a memorandum and exhibits. On April 20, 2006, Defendant VF filed a reply (entitled opposition to Plaintiff's opposition) with a declaration of Leslie Burnet with exhibits.

This diversity case was removed in February 2005; it was originally filed in state court in December 2004. The notice of removal indicates that the initial complaint was by Buckner, who was burned in a suit manufactured by VF and made of thread manufactured by DuPont, against VF and DuPont for negligence, negligent misrepresentation, strict liability, and breach of warranties. It was alleged in the original complaint that Defendants, including DuPont, knew or should have known that the garment was dangerous and abnormally hazardous for one who worked with hazardous and flammable substances, and Defendants negligently misrepresented the inflammability of the garment and

failed to warn or take precautions necessary to safeguard users. (Cmplt. at 6-7.) In the strict liability claim, it was alleged that Defendants designed, manufactured, distributed, and warned with respect to the garment; although the garment was distributed as a flame-resistant garment, Defendants "failed to mention in the labeling of the said product what its useful life is, its shelf life, if any, and the effect of repeated machine washing and/or dry cleaning with chemicals attendant thereto." (Id. at 8.) Plaintiff further alleged that in addition to marketing a defective product, Defendants marketed a product that was "<u>further defective in that it failed to warn the user, or those who would maintain it or clean it, of either its useable shelf life, use life, or condition which could degrade or limit its performance in terms of its flame resistance</u>." (Emphasis added.) (Id. at 8-9.) The complaint further alleged that Defendants knew that by failing to inform individuals such as Plaintiff of the limitations or cleaning safeguards or chemicals which should not be employed that it was inherently dangerous. (Id. at 9, ¶ 29.) Plaintiff also alleged that Defendants, including DuPont, represented that the coat would have an indefinite useful life or shelf life and could be readily cleaned or dry cleaned without any aspect of its protective capabilities being degraded thereby. (Id. at 9-10.)

All parties stipulated to the dismissal of DuPont on August 11, 2005.

Plaintiff's first amended complaint (FAC), filed on September 14, 2005, stated the same claims, alleging that Defendant Springfield was a manufacturer of the fabric, Defendant

3

VF was designer and manufacturer who introduced the coat into the market without inspection for defect; Defendant Ameripride ordered and purchased the coat from VH, and also cleaned, laundered, repaired and maintained the coat; and Defendant Washing Systems was a subcontractor of Ameripride with respect to those services (at 6). Plaintiff alleged that Defendants WSI and Ameripride knew that the methods and substances that they recommended and used were not effective in cleaning the Nomex garment and that the garment was rendered less effective and less flame resistant (at 4); further, Defendant Springfield, a manufacturer of the fabric and component parts, knew or should have known that any user of the coat be advised of the absolute need when cleaning and maintaining the garment fully and completely to remove any potentially flammable residue form the garment during the cleaning process (at 4). It was alleged that each defendant was negligent in failing to warn of the hazards. (Id. at 8.) In the strict liability action, it was expressly stated that Defendants failed to mention in the labeling of the product the useful life, shelf life, and the effect of repeated washing and/or dry cleaning; it was alleged that the product was defective in that it "failed to warn the user, or those who would maintain it or clean it, of either its useable shelf life, use life, or condition which could degrade or limit its performance in terms of its flame resistance" (Id. at 10); and it was alleged that defendants knew that by failing to inform plaintiff of the limitations of the lab coat or "the safeguards to be employed when cleaned, or dry cleaned, or chemicals which should not be employed in regard thereto...that it was inherently

4

1  dangerous...." (Id. at 10.)

2  II. Motion for Leave to File Third-Party Complaint

3  A. Legal Standard

4  Fed. R. Civ. P. 14(a) provides in pertinent part:

> (a) When Defendant May Bring in Third Party. At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff. The third-party plaintiff need not obtain leave to make the service if the third-party plaintiff files the third-party complaint not later than 10 days after serving the original answer. Otherwise the third-party plaintiff must obtain leave on motion upon notice to all parties to the action. . . .

The decision to allow impleader under Rule 14 is entrusted to the court's sound discretion. Southwest Administrators, Inc. v. Rozay's Transfer, 791 F.2d 769, 777 (9th Cir. 1986). The purpose of the rule is to promote judicial efficiency by eliminating the necessity for the defendant to bring a separate action against a third party who may be secondarily or derivatively liable to the defendant for all or part of the plaintiff's original claim. Id. The Court must balance the desire to avoid circuity of actions and to obtain consistent results against any prejudice that the plaintiff might suffer from complications of the case. Irwin v. Mascott, 94 F.Supp.2d 1052, 1056 (N.D.Cal. 2000).

Among the factors district courts have considered in determining motions for impleader are 1) prejudice to the original plaintiff; 2) complication of issues at trial; 3) likelihood of trial delay; 4) timeliness of the motion to implead; and 5) the merits of the third-party complaint.

5

Remington Arms v. Liberty Mutl. Ins., 748 F.Supp. 1057, 1068 (D.Del. 1990). The Court should also consider the possibility of delay and prejudice to other parties. Ahern v. Gaussoin, 104 F.R.D. 37, 39-40 (D.C.Or. 1984). The third-party plaintiff's claim must be dependent upon the outcome of the main claim. Stewart v. American Int'l Oil & Gas Co., 845 F.2d 196, 199-200 (9th Cir. 1988). This requires that the defendant must be attempting to transfer to the third-party defendant the liability asserted against him by the original plaintiff. However, it is not necessary that the third-party defendant be liable to the original plaintiff. Irwin v. Mascott, 94 F.Supp.2d 1052, 1056 (N.D.Cal. 2000).

### B. Analysis

Defendant VF seeks to implead Dupont as a tortfeasor from whom VF would be entitled to indemnity because DuPont invented and manufactured Nomex thread and sold it to Defendant Springfield, which used it to make fabric that it sold to Defendant VF, which designed and manufactured the lab coat. (Proposed Cmplt at 1-2.) VF alleges that DuPont had active and primary fault and negligence and thus was obligated to defend, indemnify, and hold VF harmless. VF also alleges that should it be liable, it would be entitled to contribution from DuPont of a percentage of liability. Finally, VF also seeks declaratory relief with respect to DuPont's obligation to indemnify it.

A claim for partial indemnity on a comparative fault basis by a concurrent tortfeasor is available under California law. American Motorcycle Association v. Superior Court of Los Angeles County, 20 Cal.3d 578, 599, 605-606 (1978). This doctrine with

respect to indemnity also applies to successive tortfeasors, Blecker v. Wolbart, 167 Cal.App.3d 1195, 1203 (1985), and to defendants in strict liability actions, Daly v. General Motors Corp., 20 Cal.3d 725, 742-43 (1978). Thus, the third-party complaint appears to be potentially meritorious.

Evidence that David Loftin, the VF employee who controlled or supervised the formulation of warning language, relied substantially on an entity other than DuPont (Southern Mills, a fabric supplier) in the process resulting in the warnings does not change this analysis at this point in the case. Loftin did testify that DuPont probably was consulted, that he read DuPont material and edited it into the RK-63 document, and that there was other information that was put out by VF on special care for Nomex, including general care information in the safety apparel update, the price list, and the catalog. Further, the declaration of Burnet in support of the reply, Exhs. B-D points out that DuPont literature existed which covered topics that VF included in its warning language. At this point it is not the ultimate probative posture of the evidence that is significant; rather, it is merely the issue of the legal sufficiency or futility of the statement of the claim. The fact that there is controverting evidence regarding the extent of DuPont's involvement does not render legally insufficient or futile what is otherwise a legally sufficient claim for indemnification.

The gist of the claim against DuPont by VF is the same as the Plaintiff's existing claim against VF, namely, inadequate warning regarding the nature and care of the garment. Thus, it does not appear that this issue would complicate the issues at

7

trial in any substantial sense.

The allegations of the original and first amended complaints were sufficient to put VF on notice of the presence of a defective warning theory with respect to the use or laundering of the garment. It appears that the dismissal of DuPont from the action was premature. As early as November 2005, Plaintiff's request for production included two requests for documents regarding washing Nomex garments with non-Nomex items, and on January 13, 2006, Plaintiff propounded requests for admissions containing seventeen requests regarding the washing process. Defendant's delay of months in bringing this motion is not adequately explained or excused.

Plaintiff notes that the discovery cut-off in this case was April 17, 2006; expert witness designation is due on April 21, 2006; non-dispositive motions are due by July 7, 2006, and dispositive motions by July 14, 2006; pretrial is set for August 4, 2006. More than fifteen non-expert depositions have been taken (in March and April 2006), and Plaintiff has expended over $6,000 in deposition transcripts; opening up the case to a new party would require reopening and retaking depositions that have already taken place at considerable time and expense. Further, the lab coat was cut up in February 2006 and disseminated for destructive testing at VF's request, with no piece reserved for DuPont or any other additional party. This does tend to reflect the substantial course of discovery that has been nearly completed in this case and some likely prejudice to DuPont. Significant additional discovery is likely. Trial is only five months away (September 19, 2006), and it is extremely unlikely

8

that DuPont could adequately prepare for trial within the current deadlines.

Finally, as Plaintiff notes, because VF can file a separate action for indemnity due to the fact that the impleader is permissive and not mandatory, VF will suffer no ultimate prejudice (although it would have to incur the costs and delay of another action).

III. Disposition

Accordingly, it is appropriate for the Court to exercise its discretion to deny VF's motion for leave to file a third party complaint. See, Ahern v. Gaussoin, 104 F.R.D. 37, 41-42 (D. Ore. 1984) (failure to justify ten month delay); McDougald v. O.A.R.S. Companies, Inc., 2006 WL 997896, *3 (E.D.Cal. April 17, 2006).

The motion of Defendant VF Imagewear, Inc. for leave to file a third-party complaint IS DENIED.

IT IS SO ORDERED.

**Dated:   April 28, 2006**              /s/ Sandra M. Snyder
icido3                                   UNITED STATES MAGISTRATE JUDGE